IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

NATH CROCKETT WOMACK,      §
TDCJ-CID NO. 803963,             §
         Petitioner,      §
v.                                      §          CIVIL ACTION G-07-0510
NATHANIEL QUARTERMAN,       §
         Respondent.      §

OPINION ON DISMISSAL

Petitioner Nath Crockett Womack, a state inmate incarcerated in the Texas Department of Criminal Justice – Correctional Institutions Division ("TDCJ-CID"), has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his state court felony conviction. On April 22, 2008, the Court dismissed the petition as untimely pursuant to the holding of *Salinas v. Dretke*, 354 F.3d 425, 430-31 (5th Cir. 2004). (Docket Entry No.11). On December 21, 2009, the Fifth Circuit Court of Appeals vacated the judgment of this Court and remanded the case for further proceedings in light of *Jimenez v. Quarterman*, 555 U.S. 113, 129 S.Ct. 681, 686 (2009). *Womack v. Thaler*, No.08-40478 (5th Cir. 2009).

On remand, the Court found that the pending federal habeas petition was not time-barred and vacated its Opinion on Dismissal of April 22, 2008. (Docket Entry No.23). Thereafter, respondent filed the present motion for summary judgment (Docket Entry No.26), to which petitioner has filed a response. (Docket Entry No.31).

Petitioner has also filed a motion for an evidentiary hearing (Docket Entry No.30) and a motion to amend his petition (Docket Entry No.32), to which respondent has filed a response. (Docket Entries No.34, No.35).

For the reasons to follow, the Court will grant respondent's motion for summary judgment and deny all other motions.

I.      BACKGROUND AND PROCEDURAL HISTORY

A jury in the 23rd Criminal District Court of Brazoria County, Texas, heard the following evidence in cause number 31,865:  In mid-July 1996, while separated from his wife pending a final divorce, petitioner attempted suicide and was hospitalized for one week. *Womack v. State*, No.13-97-00397-CR, Reporter's Record IV, pages 211-214, 240.  Petitioner was diagnosed with major depression and an "alcohol and mixed substance abuse" condition. *Id.,* page 250.  His attending psychiatrist prescribed the antidepressant Zoloft as his primary treatment agent, the antidepressant Trazodone as needed to assist him in sleeping, and an antipsychotic tranquilizer Mellaril as needed if he became anxious or agitated.[1]  *Id.*, page 241. Petitioner seemed to respond well to the Zoloft and to talk therapy.  *Id.*, pages 257-58.  Upon his release from the hospital, petitioner was to continue on the antidepressant medication and participate in an intensive chemical dependency treatment and an aftercare program.  *Id*., page 242.

Petitioner was discharged from the hospital on July 22, 1996, and moved in with his mother.  *Id.*, page 248.  His mental state seemed to improve and he did not appear to be upset that the divorce was final.[2]  *Id.*, pages 230, 269.  A long-time friend, however, observed that petitioner seemed to be numb, dazed, and withdrawn.  *Id*., page 302.  Petitioner told the friend that he was upset about the divorce and that his ex-wife could be seeing someone else but he did not express any animosity.  *Id.*, page 304.  Two other friends testified that after his release from the hospital and before the murder, petitioner acted normal and well and that he looked good and

---

[1]  The surgeon who repaired his cut wrists prescribed the antibiotic Suprax and the pain medication Lortab. Petitioner's sister attested that petitioner did not take the Suprax because it was expensive.  *Womack v. State*, No.13-07-00397-CR, Reporter's Record IV, pages 255, 268.

[2]  The divorce became final on July 24, 1996.  *Womack v. State*, No.13-97-00397-CR., Reporter's Record IV, page 134.

said he felt good. *Id*., pages 350, 353-54. He told them that "everything was going to be all right, and he knew what he had to do." *Id.*

On August 6, 1996, approximately two weeks after his release from the hospital, petitioner returned to work at a car dealership; his mother and sister did not think he was ready to return to work and his doctor had not released him to return to work. *Id*., page 218, 271. A co-worker recalled seeing petitioner around 3:00 p.m. on August 6, 1996, and noted that petitioner was sweating profusely. *Id.*, pages 293-94. Petitioner seemed normal otherwise. *Id.*, page 298. Petitioner's supervisor testified that petitioner worked as a heavy duty automobile and truck mechanic. *Id*. at 334. He attested that petitioner performed satisfactory work on the day of the murder but that he left almost an hour earlier than normal. *Id.* He described the day as a "scorcher," but normal otherwise. *Id*., page 336.

In his written statement to a law enforcement officer, petitioner indicated that his ex-wife had been mean to him on the telephone the night before he returned to work and that he was very upset. *Id.*, page 183. He began to feel badly at work around 9:30 a.m., because he had forgotten to take his medication. *Id.*, pages 183, 272. He called his sister and she brought him the Zoloft around noon. *Id.*, pages 183, 273. His sister testified that he was shaking badly and sweating profusely when she placed the Zoloft in his hand. *Id.*, pages 272-73.

Petitioner also stated in his written statement that he left work early around 4:30 p.m. and went to his apartment, where he rested for about fifteen minutes. *Id.* He then went into his kitchen and retrieved a fold-up knife from the kitchen drawer and put it in his pocket. *Id.*, pages 183-84. He drove to his ex-wife's place of employment, but she was not there. *Id.*, page 184. He then drove to her mother's house and picked up his son; her mother would not tell petitioner the location of his ex-wife but she gave him a note from the ex-wife with instructions

3

about their son.  *Id*.  Petitioner drove to his ex-wife's house.  *Id*.  He left his son in the car and went to her door.  The phone was ringing as his ex-wife opened the door.  *Id*.  When the ex-wife turned, petitioner grabbed her and they fell to the floor.  He then "took out [his] knife and cut her."  *Id*.  He left the house and drove to the Brazoria City police station where he told police officers that he had just killed his wife.  *Id*.

The mother of petitioner's ex-wife testified that she saw petitioner between 5:00 and 5:30 p.m. on August 6, 1996, when he came by to pick up his son for a legal visit.  *Id.*, page 133.  Petitioner asked her where his ex-wife was and she told him that she was probably at home; they laughed that the ex-wife had most likely forgotten her work schedule.  *Id*., page 134.  Petitioner appeared very normal to his ex-mother-in-law.  *Id.*, page 135.

Around 6:00 p.m., petitioner appeared at the police station and told those gathered in the lobby that he had killed his wife.  *Id.*, pages 41-42, 44-45, 67-68, 72-74, 88-90, 115, 119- Autopsy evidence showed that petitioner's ex-wife died of multiple stab wounds in the chest and upper abdomen, most likely from a knife.  *Id*., page 104.  While detained in the jail, petitioner told another detainee that he had killed his ex-wife because she was messing around on him while they were married.  *Id.*, pages 194, 196.  He said that he went to talk to her and got frustrated and started stabbing her with a fold-up pocket knife, which he threw over a bridge.  *Id.*, pages 195-196.  He told the detainee that after he stabbed her, he got in his car where his son was sleeping and left.  *Id*., page 196.  He also described the nature of her stab wounds.  *Id.*, page 195.

The jury also heard testimony about some of the side-effects of Zoloft and evidence of petitioner's depressed mental state, and his sanity examination.  *Id*., pages 239-259;

317-330.  On June 18, 1997, the jury convicted petitioner of murder and assessed punishment at confinement for life in TDCJ-CID.  (Docket Entry No.1).

On direct appeal, petitioner complained that the state district court erred in admitting petitioner's written confession into evidence.  *Womack v. State*, No. 13-97-00397-CR, 1998 WL 34202187 at *1 (Tex. App.—Corpus Christi, 1998 pet ref'd).  The state intermediate appellate court concluded that jurors in the case properly applied the law to the facts to reach their verdict and that the state district judge properly admitted the written confession into evidence and that jurors were able to reach the guilty verdict "even without the confession."  *Id.* at * 4.

Initially, petitioner did not file a petition for discretionary review ("PDR").  He later filed a state habeas corpus application on June 28, 2004, complaining that his appellate counsel rendered ineffective assistance of counsel and requesting leave to file an out-of-time PDR.  *Ex parte Womack*, Application No.WR-60,118-01.  The Texas Court of Criminal Appeals granted the application on October 13, 2004.  *Id.* at cover.  *See also Ex parte Womack*, No.75025, 2004 WL 3261168 (Tex. Crim. App. 2004).  Petitioner then filed an out-of-time PDR on January 27, 2005, which the Texas Court of Criminal Appeals refused on June 8, 2005.  *See Womack*, No.13-97-00397-CR, 1998 WL 34202187.  The Supreme Court denied his petition for writ of *certiorari* on November 14, 2005.  *Womack v. Texas*, 546 U.S. 1018 (2005).

Petitioner filed a second state habeas application on November 2, 2006, in which he challenged his conviction on the following grounds:

1. There was no evidence of the required element of culpable mental state for the offense of murder;

2. He was denied the effective assistance of counsel at trial because trial counsel:

> > a.      raised only an insanity defense and not the defense of involuntary intoxication;
>
> > b.      did not investigate the involuntary affects of the prescription medication taken by petitioner at the time of the offense; and,
>
> > c.      did not request a jury instruction on the defensive issue of involuntary intoxication;
>
> 3.      He was denied due process of law because the state district court did not instruct the jury on the issue of involuntary intoxication as raised by the evidence at trial; and,
>
> 4.      He is actually innocent of the offense because the evidence shows that he was involuntarily intoxicated at the time of the offense, which negates an element of the offense, and he was denied the effective assistance of counsel.

*Ex parte Womack*, Application No.WR-60,118-02, pages 4-14; 19-99).  The state district court recommended that relief be denied.  On October 3, 2007, the Court of Criminal Appeals denied the application based on the trial court's findings of fact and conclusions of law and the Court's independent review of the entire record.  *See Ex parte Womack*, Application No.60,1180-02 (Order Issued).

Petitioner filed his petition for a federal writ of habeas corpus in this Court on October 8, 2007, challenging his conviction on the same grounds raised in his state habeas application.  (Docket Entry No.1).  On April 19, 2010, respondent filed a motion for summary judgment on grounds that petitioner failed to meet his burden of proof under section 2254(d)(1) of the AEDPA and that his claims are without merit.  (Docket Entry No.26).  On July 6, 2010, petitioner filed, through counsel, a response to the motion for summary judgment (Docket Entry No.31), a motion for an evidentiary hearing (Docket Entry No.30), and a motion to amend petition.  (Docket Entry No.32).  On July 15, 2010, respondent filed a response to both motions.

(Docket Entries No.34, No.35).  Months later on November 23, 2010, petitioner filed a reply to each response.  (Docket Entries No.36, No.37).

II.    MOTIONS TO AMEND AND FOR EVIDENTIARY HEARING

A.    Motion to Amend

Petitioner seeks to amend each of the four grounds in the present habeas action. (Docket Entry No.32).  Respondent argues that petitioner's amendment should be denied because petitioner is adding new unexhausted claims that would be procedurally barred under Texas's abuse-of-the-writ doctrine, the State would be unduly prejudiced by the amendments, and some or all of the amended claims are barred by the statute of limitations.  (Docket Entry No. 34).  In rebuttal, petitioner argues that the amendments "merely clarify, expand, and more thoroughly explain why [he] is entitled to relief" . . . and that such amendments do not fundamentally alter the claim.  (Docket Entry No.36, page 2).  He moves for such amendment because "justice so requires."  (*Id*., page 2).

The Federal Rules of Civil Procedure govern the disposition of petitioner's motion to amend.  *See* Rule 11 of the Rules Governing Section 2254 Proceedings for the United States District Courts.  While granting petitioner leave to amend his petition is within this Court's discretion, Rule 15(a) of the Federal Rules of Civil Procedure "evinces a strong bias in favor of granting a motion for leave to amend a pleading."  *FDIC v. Conner*, 20 F.3d 1376, 1385 (5th Cir. 1994).  Rule 15 requires this Court to freely grant petitioner leave to amend "when justice so requires."  FED. R. CIV. P. 15(a).  Thus, under Rule 15, this Court must grant petitioner's motion to amend "unless there is a substantial reason to deny leave to amend[.]" *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981).

"Futility of amendment" is one such reason.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  An amendment is futile when "a [petition], as amended, would be subject to dismissal[.]"  *DeLoach v. Woodley*, 405 F.2d 496, 497 (5th Cir. 1968).  Petitioner has submitted one or more unexhausted claims in his motion to amend, one of which is subject to dismissal without consideration of the federal procedural bar, and therefore, is futile.  *See Caswell v. Calderon*, 363 F.3d 832, 837 (9th Cir. 2004) (finding futile an effort to add unexhausted claims through amendment).  To satisfy the AEDPA's exhaustion requirement, a petitioner must "fairly 'present[ ] the substance of his claim to state courts.'"  *Moore v. Quarterman*, 491 F.3d 213, 220 (5th Cir. 2007) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 258 (1986)).  The substance of a claim has been "fairly presented" to a state court if that court was "presented with the same facts and legal theory upon which the petitioner bases his current assertions."  *Ruiz v. Quarterman*, 460 F.3d 638, 643 (5th Cir. 2006) (citations omitted).  Thus, "if the petitioner presents new legal theories or new factual claims in his federal application," the petitioner fails to satisfy the exhaustion requirement.  *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998).  However, a petitioner satisfies the exhaustion requirement if a claim in the federal petition is the "'substantial equivalent' of one presented to the state courts."  *Id.*

In his third ground of the pending petition, petitioner complains that the state district court violated his right to due process by failing to instruct the jury on the defense of involuntary intoxication.  (Docket Entry No.1).  Petitioner seeks to amend this ground with a claim that the state district court violated his due process rights by its failure to find that his trial counsel rendered constitutionally ineffective assistance of counsel on direct appeal, a claim that he did not raise in state court.  (Docket Entry No.32, page 4).  Petitioner complained in his first state habeas application that his retained appellate counsel, and not his trial counsel, rendered

ineffective assistance of counsel on appeal and deprived him of his right to file a PDR.[3]  *Ex parte Womack*, Application No.WR-60,118-01, page 16.  He did not challenge on direct appeal or in either state habeas application, the state court's denial of his ineffective-assistance-of counsel claim on the grounds he alleges in the purported amendment to ground three of the present habeas petition.  Therefore, he has failed to exhaust the purported amended claim.[4]

Moreover, to the extent that petitioner seeks to amend the due process claim in ground three to challenge the state district court's failure to find that petitioner's appellate counsel rendered constitutionally ineffective assistance of counsel, there is nothing for this Court to remedy with respect to such claim.  *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (explaining that a case becomes moot if it is "no longer present[s] a case or controversy under Article III, § 2 of the Constitution).  Although neither the state district court nor the Texas Court of Criminal

---

[3]  Attorney Kelly McClendon represented petitioner on direct appeal.  *Ex parte Womack*, Application No.WR-60,118-01, pages 26, 28, 33, 35.

Nevertheless, petitioner complains in the purported amendment that he was denied due process of law by the trial court's failure to find trial counsel ineffective after she

> admitted to having no file or notes to benefit Womack, having no independent recollection of the case to benefit Womack, having failed to provide him with appropriate *pro se* deadlines so that he had an opportunity to have his case under review via a Petition for Discretionary Review prior to a higher court's order enabling an opportunity to file a[n] out-of-time PDR, and having failed to offer an evidentiary hearing after the affidavit of trial counsel as to these deficiencies so that the trial court could make appropriate determinations as to her other ineffective behavior.

(Docket Entry No.32, page 4).  The record shows that McClendon attested that she had no independent recollection of the series of events regarding the issues petitioner raised regarding the PDR and that she was unable to locate her file regarding his case.  *Ex parte Womack*, Application No.WR-60,118-01, page 41; *see also* pages 26, 27-29.

[4]  "It is well settled that a habeas petition must be dismissed if any issue has not been exhausted in the state courts."  *Thomas v. Collins*, 919 F.2d 333, 334 (5th Cir. 1990).  "If the petitioner did not fairly present the substance of his claims to the state courts ..., the petition must be dismissed ... so that the state court may have a fair opportunity to determine" the claim.  *Dispensa v. Lynaugh*, 847 F.2d 211, 217-18 (5th Cir. 1988).  "This exhaustion rule requires the dismissal of any habeas petition that contains claims not yet raised in available state court proceedings, even if such claims are mixed with exhausted ones."  *Sones v. Hargett*, 61 F.3d 410, 415 (5th Cir. 1995).

Appeals entered a finding on petitioner's ineffective assistance of appellate counsel claim,[5] the Texas Court of Criminal Appeals granted the relief that petitioner sought in the first state habeas application, *i.e.*, leave to file an out-of-time PDR.[6]   *Ex Parte Womack*, No.75,025.   Because petitioner has received all the relief to which he is entitled with respect to such claim, he fails to state a claim upon which federal habeas corpus relief can be granted.

Petitioner's purported amendments in grounds one, two, and four expand his ineffective assistance of counsel claims to include claims that trial counsel failed to (1) investigate whether petitioner's psychiatrist and the dispensing pharmacist disclosed the side effects of the drugs to petitioner and to put on evidence of the same at trial, (2) adequately explore the effect of the intoxicating medication by requesting a second evaluation of petitioner and preserving evidence of collateral witness testimony; (3) present a proper defense by presenting testimony from a second psychological/psychiatric evaluator and pharmaceutical expert, expert testimony regarding the vital nature of collateral interview process with sanity evaluations, and testimony of collateral witnesses.   The Court agrees that such purported amendments "place petitioner's claims in a significantly different and stronger evidentiary posture than they were before the state courts."  Docket Entry No.34, page 6).

In state habeas proceedings, petitioner complained that his trial counsel rendered constitutionally ineffective assistance of counsel as follows:

1.  Trial counsel failed to investigate the psychiatric medications and pain medication, which Applicant was under the influence of at the time of the offense, and the adverse effects/involuntary intoxication they caused;

---

[5] *Ex parte Womack*, Application No.WR-60,118-01, page 55 (finding that laches barred such claim); *Ex Parte Womack*, No.75,025 (Tex. Crim. App. 2004) (finding the State failed to plead laches or make a particularized showing of prejudice).

[6] Texas trial courts only make recommendations to the Court of Criminal Appeals but do not rule on habeas petitions.  *Ex Parte Brown*, 205 S.W.3d 538, 546 (Tex. Crim. App. 2006).

2.   Trial counsel failed to present evidence of the adverse effects/involuntary intoxication of Applicant caused by the psychiatric medications and pain medication, which contributed to the death of the victim, at trial;

3.   Trial counsel, fully aware of Dr. Lee's evaluation of Applicant to be both sane and competent to stand trial, entered trial on an insanity defense fully inadequate to defend her client against the offense charged;

4.   Trial counsel failed to request the trial court instruct the jury on the defense of involuntary intoxication as Applicant was under the influence of psychiatric medications and pain medication, which is known to have caused homicidal adverse events in persons diagnosed with severe depression, such as Application; and,

5.   Trial counsel failed to procure and present testimony from an expert witness on the adverse effects/involuntary intoxication of Applicant due to the prescribed psychiatric medications and pain medication he was taking at the time of the offense.

*Ex parte Womack*, Application No.WR-60,118-02, Writ Received, page 30.  He did not complain of his trial counsel's failure to rebut expert testimony with regard to the value of collateral interviews in the evaluation process he involuntarily ingested the medications because his attending physician or the dispensing pharmacist failed to disclose the potential side effects of the medication.  Such claims are entirely new, unexhausted, and subject to procedural default under the State's abuse of the writ doctrine.  *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (finding that procedural default occurs where (1) a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, or (2) the petitioner fails to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred).  Petitioner sets forth no reasons for the failure to address such claims and his claim of actual innocence affords him no relief from such default for reasons set forth below.

In light of the futility of these purported amendments, the Court DENIES petitioner's motion for leave to file an amended petition.  (Docket Entry No.32).

B.    <u>Motion for Evidentiary Hearing</u>

Petitioner also requests an evidentiary hearing because "[r]esolution of issues raised by way of Petitioner's writ of habeas corpus and subsequently disputed in the Motion for Summary Judgment involve[] determination of controverted and previously unresolved issues to Petitioner's confinement."  (Docket Entry No.30).  Respondent contends that petitioner is not entitled to expand the factual basis of his contention that the denial of state habeas relief was unreasonable because he is not entitled to an evidentiary hearing in federal court.  (Docket Entry No.35).  In response, petitioner argues that he seeks an evidentiary hearing to further develop his ineffective-assistance-of-counsel claims on grounds that his trial counsel was deficient in her poor handling of experts regarding their evaluations and because she chose not to develop the available and necessary evidence to support a defense of involuntary intoxication.  (Docket Entry No.37, page 2).  Petitioner's present counsel attests that he is prepared to offer the testimony of a licensed psychologist regarding the deficiencies with trial counsel's 1996-1997 assessments pertaining to the examiner's failure to conduct collateral interviews in the course of the assessment and other notable deficiencies as they relate to the evaluations in this case.  (Docket Entry No.37-1, pages 1-2).  Present counsel further attests that he is prepared to elicit testimony from a pharmaceutical expert to give rise to the involuntary intoxication affirmative defense and to subpoena the records of the pharmacist who dispensed the medication to petitioner in 1996. (*Id.*, page 2).

"Evidentiary hearings in federal habeas proceedings are governed by 28 U.S.C. § 2254(e)(2), which states that if an applicant has failed to develop the factual basis of his claim in

state court proceedings, a federal court should not hold an evidentiary hearing on the claim." *Conner v. Quarterman*, 477 F.3d 287, 293 (5th Cir. 2007).  A failure to establish a factual basis is not established, however, "unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."  *Williams v. Taylor*, 529 U.S. 420, 432 (2000).  In this regard, "[d]iligence . . . depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue the claim in state court."  *Id.*, at 435.  Likewise, a "reasonable attempt" requires that a habeas applicant affirmatively seek an evidentiary hearing in state court in the manner prescribed by state law.  *Id.* at 437.

Petitioner claims his trial counsel bears fault for failing to develop such evidence during trial and that he bears no fault because he was unaware "of his ability to secure documentary proof and expert opinion as to the questionable psychological assessments in the state court proceedings and affirmative defense capabilities until the same were explained by the undersigned attorney in the course of this writ proceeding."  (Docket Entry No.35).  The real question in this instance is not whether petitioner or his trial counsel developed such evidence during trial but whether petitioner diligently pursued this ineffective-assistance-of-counsel claim in his 2007 state habeas proceeding.

The record shows that petitioner filed his state habeas application and memorandum in December 2006; he requested an evidentiary hearing and indicated that resolution of the issues in the application would require the testimony of expert witnesses.  *Ex parte Womack*, Application No.WR-60,118-02.  He attached to the memorandum the sanity evaluations of Dr. Shayna F. Lee and copies of articles published in 2000 or later about the adverse effects of Zoloft and anti-depressant lawsuits.  He also attached information about two Houston lawyers who represent clients in such cases.  *Ex parte Womack*, Application No.WR-

60,118-02, Writ Received.  In January 2007, the Texas Court of Criminal Appeals ordered the state district court, sitting as a habeas court, to use any means provided in the State's habeas statute, to hear evidence regarding petitioner's ineffective assistance of counsel claims and to make findings of fact and conclusions of law.  *Id.* Supp Recd, page 5.  The state habeas court did not hold an evidentiary hearing but ordered the parties to submit affidavits on petitioner's ineffective-assistance-of-counsel claims.  *Id.*, page 2.

In mid-to-late February 2007, petitioner and his trial counsel Mary Peter Cudd submitted their affidavits to the state habeas court.  *Id.*, pages 7-10.  On March 3, 2007, after the expiration of the deadline to submit such evidence, petitioner moved to expand the state habeas record and to set an evidentiary hearing on his other claims.[7]  *Id.* Supp/Clerk Record.  In this motion, petitioner summarized in six points his allegations of ineffective assistance of counsel by making reference to his trial counsel's affidavit.[8]  *Id.*, page 5.  Notably, he did not complain that his trial counsel failed to question the experts at trial about the use of collateral interview

---

[7] Apparently, the supplemental records were considered by the state habeas courts.  *See* <u>Texas Court websites</u> at:

<u>http://records.brazoria-county.com/JudicialSearch/Scripts/UVlink.isa/brazoria_tsg/WEBS</u>  (viewed  December  30, 2010);
<u>http://www.cca.courts.state.tx.us/opinions/Case.asp?FilingID=248429</u> (viewed December 30, 2010).

[8] Petitioner complained that his trial counsel—

1.  only read the medical literature procured by his sister;

2.  sought the expertise of a family practitioner instead of a pharmacologist;

3.  did not search case law or other sources noted in the medical literature;

4.  never researched the specific drugs and combination of drugs that petitioner had ingested before the offense;

5.  only attempted to elicit testimony of intoxication at the suppression hearing; and,

6.  never sought the testimony of an expert witness to testify that petitioner's adverse reaction to the medications caused him to harm his wife nor raise the defense of involuntary intoxication.

*Ex parte Womack*, Application No.WR-60,118-02, Supp/Clerk Record, page 5.

evidence in making evaluations or other notable deficiencies in evaluating his state of mind and he did not attach the affidavit of any expert regarding the same.

In the same motion, petitioner sought the state habeas court's consideration of exhibits in support of his claim that trial counsel had failed to pursue her belief that his actions were the result of an adverse reaction to psychotropic drugs and that she had access in 1996 to the names of several experts in the field of psychopharmacology. *Id.,* page 6. Petitioner attached to the motion a letter from trial counsel dated May 22, 1997, his sister's sworn statement about her research of medical literature in 1996, and copies of literature regarding the adverse effects of Zoloft, which allegedly were made available to trial counsel in 1996. *Id.* Petitioner did not attach the affidavit of an expert regarding prescriptive drug intoxication, an affidavit from the dispensing pharmacist or records from the dispensing pharmacy, or an affidavit from the prescribing psychiatrist showing that he had not received notice of the adverse effects of the drugs before he ingested them.

Based on this record, the Court finds that petitioner was not diligent in developing facts in state habeas proceedings to support the narrow ineffective assistance of counsel claims, upon which he presently seeks an evidentiary hearing. Petitioner's pleadings show his awareness that expert testimony would be required to support his claims and his exhibits reflect his awareness of resources by which he could obtain such expertise. Yet, petitioner did not submit the affidavit of any expert, including those who testified at trial, regarding his or her knowledge and evaluation of persons who suffer from adverse reactions to psychotropic medication. Likewise, he did not submit the affidavit of the pharmacist who dispensed the medication to him or the psychiatrist who prescribed it, regarding their knowledge of whether petitioner was aware of the side-effects before he took the medication.

Where a habeas petitioner has failed to fully develop the factual basis of his claims in state court, he is precluded from further factual development in federal court unless he can meet the narrow exceptions contained in 28 U.S.C. § 2254(e)(2).  *Williams*, 529 U.S. 420, 430.  Section 2254(e)(2) provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> > (A) the claim relies on-
> >
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > >
> > > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> >
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).  Petitioner does not contend that his claim relies on a new rule of constitutional law or a factual predicate that could not have been previously discovered. Moreover, he alleges no facts sufficient to establish by clear and convincing evidence that but for having received ineffective assistance of counsel at trial, no reasonable fact-finder would have found him guilty of murder.  Accordingly, petitioner's motion for an evidentiary hearing (Docket Entry No.30) is DENIED.

III.    <u>DISCUSSION</u>

In deciding a motion for summary judgment, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

16

party is entitled to judgment as a matter of law." FED. R. CIV. P. 56.  The moving party bears the initial burden of informing the court of the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.  *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001); *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992).  Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact."  *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

Petitioner's federal habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *Lindh v. Murphy*, 521 U.S. 320 (1997).  The AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings."  *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).  Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).

The petitioner retains the burden to prove that he is entitled to habeas corpus relief.  *Williams v. Taylor*, 529 U.S. 362 (2000).  In this case, petitioner presented claims in his petition for discretionary review and state habeas corpus application, which the Texas Court of Criminal Appeals denied without written order.  As a matter of law, a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of a claim.  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)).  Therefore, only those claims properly raised by petitioner in his petition for

17

discretionary review and his state habeas application have been adjudicated on the merits by the state courts.

Where a petitioner's claim has been adjudicated on the merits, section 2254(d) holds that this Court shall not grant relief unless the state court's adjudication:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams*, 529 U.S. at 411-13; *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  Courts are to review pure questions of law and mixed questions of law and fact under subsection (d)(1), and pure questions of fact under subsection (d)(2).  *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).

"The standard is one of objective reasonableness."  *Montoya*, 226 F.3d at 403-04 (quoting *Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring)).   Under this standard, a federal court's review is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning."  *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (citing *Cruz v. Miller*, 255 F.3d 77, 86 (2nd Cir. 2001) (noting that even where a state court makes a mistake in its analysis, "we are determining the reasonableness of the state court's 'decision,' . . . not grading their papers")).

A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 413.  A decision is an unreasonable application of federal law "if

the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* To be unreasonable, the state decision must be more than merely incorrect. *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). A reversal is not required unless "the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'" *Id.* Factual findings made by the state court in deciding a petitioner's claims are presumed correct, unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules. *Smith*, 311 F.3d at 668 (citing Rule 11 of the Rules Governing Section 2254 Cases in District Courts). Therefore, section 2254 (e)(1), which mandates that findings of fact made by a state court are presumed correct, overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party. *Id.* Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *Id.*

A.    Sufficiency of the Evidence

Petitioner claims there is no evidence that he had the required mental state to commit the offense of murder because at the time of the offense, he was involuntarily intoxicated as the result of ingesting prescription medication and therefore, incapable of forming the intent to

murder.  (Docket Entry No.1).  Petitioner admits that he stabbed his ex-wife and that he told police officers that he killed her but contends that the evidence shows that was suffering the adverse effects of psychotropic medication and therefore, could not form the intent to murder his wife.  (*Id*.).

A criminal defendant has a federal due process right to be convicted only upon evidence that is sufficient to prove beyond a reasonable doubt the existence of every element of the offense.  *Foy v. Donnelly*, 959 F.2d 1307, 1313 (5th Cir. 1992).  Federal courts have extremely limited habeas review of claims based on the sufficiency of the evidence, and the standard for reviewing such claims is supplied by *Jackson v. Virginia*, 443 U.S. 307 (1979). When reviewing such claims against the underlying conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Id.* at 319. When faced with a record of historical facts that supports conflicting inferences, courts must presume, even if it does not affirmatively appear in the record, that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.  *Id.* at 326.  Further, under *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review.  *Schlup v. Delo*, 513 U.S. 298, 330 (1995).  Determining the weight and credibility of the evidence is within the sole province of the jury.  *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992).  Courts view any required credibility determinations in the light most favorable to the guilty verdict.  *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000).

In Texas, a person commits murder if he intentionally or knowingly causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.  TEX. PEN. CODE ANN. §

19.02(b)(1)-(2) (Vernon 2003).  Under state law, the specific intent to kill may be inferred from the use of a deadly weapon in a deadly manner; further, that inference is virtually conclusive on the issue of the defendant's intent to kill.  *See Garcia v. Texas*, 887 S.W.2d 862, 869 (Tex. Crim. App. 1994).

Involuntary intoxication is an affirmative defense to criminal culpability in Texas when it is shown that: (1) the accused has exercised no independent judgment or volition in taking the intoxicant; and (2) as a result of his intoxication, the accused did not know that his conduct was wrong or was incapable of conforming his conduct to the requirement of the law he allegedly violated.  *Torres v. State*, 585 S.W.2d 746, 749 (Tex. Crim. App. 1979); *see Cooper v. Scott*, 35 F.3d 562 (5th Cir. 1994) (not selected for publication) (stating "involuntary intoxication is a defense only if (1) the accused has exercised no independent judgment in consuming the intoxicant; and (2) as a result of his intoxication he did not know that his conduct was wrong"). Involuntary intoxication by prescription medication occurs only "if the individual had no knowledge of possible intoxicating side effects of the drug, since independent judgment is exercised in taking the drug as medicine, not as an intoxicant."  *Mendenhall v. State*, 15 S.W.3d 560, 565 (Tex.App.-Waco 2000)*, affirmed,* 77 S.W.3d 815, 818 (Tex. Crim. App. 2002).

Insanity is also an affirmative defense to prosecution if at the time of the conduct giving rise to the criminal offense, "the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong."  TEX. PEN. CODE ANN. § 8.01(a) (Vernon 2003).

In this case, the state habeas courts entered no findings of fact or conclusions of law on petitioner's insufficiency claim in his state habeas application.  *Ex parte Womack*, Application No.WR-60,118-02, pages 11-13.  The record, however, reflects sufficient evidence for a rational jury to find that petitioner had the requisite mental state to commit the offense of

murder and that he was not involuntarily intoxicated or insane at the time of the offense.  The record shows that petitioner retrieved a knife from his house and sought out his ex-wife because he was upset with her.  When she opened the door to her home, he grabbed her and they fell to the floor.  He stabbed her multiple times.  He confessed the killing to police officers immediately thereafter, gave a written statement confessing to the murder, and confided in another detainee about the details of the stabbing.  Although the record reflects evidence of petitioner's depressed mental state, it is void of evidence showing that petitioner was psychotic or that he could not distinguish right from wrong.  Moreover, the record reflects no evidence that petitioner ingested the prescription drugs without knowledge of the potential side-effects of the prescription medication.  *See Womack v. State*, No.14-3-97-00397-CR, Reporter's Record, Volume IV, pages 215-16 (sustaining objection to question as to whether pharmacist disclosed side effects of prescription medication to petitioner's sister who obtained the medication for petitioner).  The record, however, shows that petitioner was aware that the Zoloft affected his physical and mental state.  Petitioner told his sister that he felt that something was not right and then he remembered that he had not taken the Zoloft that morning; she observed him shaking badly and sweating profusely when she placed the Zoloft in his hand.  *Id.*, pages 272-73.  The record also shows that he chose to ingest the medication by requesting that she bring the medication to him at work.  *Compare Hanks v. State*, 542 S.W.2d 413, 415-16 (Tex. Crim. App. 1976) (noting that defendant's consumption of drink after acknowledging his awareness of its adulteration would not be sufficient to raise issue of involuntary intoxication because "there must be an absence of an exercise of independent judgment and volition on the part of the accused in taking the intoxicant").

Applying the *Jackson* standard to this case and after conducting a thorough review of the record, the Court finds that a rational jury could have found that the evidence presented in petitioner's trial established the essential elements of murder beyond a reasonable doubt. The Court further finds that the evidence did not establish the affirmative defense of involuntary intoxication or legal insanity. The decision of the state habeas courts to deny petitioner habeas relief appears, therefore, to be based upon a reasonable determination of the facts in light of the evidence presented. Accordingly, petitioner's claim of insufficiency of the evidence is denied.

B.      Ineffective Assistance of Trial Counsel

Petitioner claims he was denied the effective assistance of counsel at trial because his trial counsel did not raise an involuntary intoxication defense, did not investigate the involuntary affects of the prescription medication taken by petitioner at the time of the offense, and did not request a jury instruction on the defensive issue of involuntary intoxication. (Docket Entry No.1).

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of trial counsel is measured by the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on an ineffective assistance of counsel claim, petitioner must establish that his counsel's performance was deficient and that the deficiency prejudiced his defense. *Ogan v. Cockrell*, 297 F.3d 349, 360 (5th Cir. 2002) (citing *Strickland*, 466 U.S. at 692). The failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

Counsel's performance is deficient when the representation falls below an objective standard of reasonableness. *Ogan*, 297 F.3d at 360. Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption" that "trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy." *West v. Johnson,* 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1993). Mere "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 687-90. A deficiency in counsel's performance, standing alone, does not equal ineffective assistance of counsel if no actual prejudice is demonstrated.

Counsel's deficient performance results in actual prejudice when a reasonable probability exists "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Confidence in the outcome of the trial is undermined when counsel's deficient performance renders "the result of the trial unreliable or the proceeding fundamentally unfair." *Pratt v. Cain*, 142 F.3d 226, 232 (5th Cir. 1998) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Pratt*, 142 F.3d at 232 (quoting *Lockhart*, 506 U.S. at 372).

A claim of ineffective assistance of counsel presents a mixed question of law and fact. *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001). Because petitioner's ineffective-assistance claims were previously considered and rejected on state habeas corpus review, the

state court's decisions on those claims will be overturned only if it is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

Counsel "has a duty to make a reasonable investigation of the defendant's case or to make a reasonable decision that a particular investigation is unnecessary."  *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997).  To determine the reasonableness of counsel's decision to limit the scope of his investigation under prevailing professional norms, the Court analyzes such conduct as follows:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 690-91.

As with any ineffective assistance of counsel claim, the petitioner must prove that an alleged breach of his attorney's duty to investigate "resulted in an actual and substantial disadvantage to the course of his defense."  *Baldwin v. Maggio*, 704 F.2d 1325, 1333 (5th Cir. 1983).  "In order to satisfy the prejudice prong of *Strickland*, [a defendant] must show 'more than the mere possibility of a different outcome.'   [He] must present 'evidence of sufficient quality and force to raise a reasonable probability that,' had it been presented to the jury, the outcome would have been different."  *United States v. Drones*, 218 F.3d 496, 504 (5th Cir. 2000) (citations omitted).

The state district court, sitting as a habeas court, found that petitioner's trial counsel, Attorney Mary Peter Cudd, investigated the possibility that Zoloft may have triggered petitioner's action by reading several named articles on the subject and by contacting a physician and a pharmacist.[9]  *Ex parte Womack*, Application No.WR-60,118-02, Supp Recd, pages 11-12. The state habeas court further found that Attorney Cudd viewed the videotape of petitioner after the incident and saw no apparent evidence of intoxication or under the influence of an intoxicating substance; therefore, she was unable to produce any evidence of the same and could not obtain a jury instruction on the same.  *Id.*  The state habeas court concluded that in 1996, Attorney Cudd "could find no body of evidence available to her to support her theory that Zoloft caused Applicant to harm his wife."  *Id.*, page 12.  The state habeas court concluded that Attorney Cudd was not ineffective in her investigation of the defense of involuntary intoxication and not ineffective in failing to request a jury instruction on the defense.  *Id.*, pages 12-13.  The Texas Court of Criminal Appeals denied the state habeas application on the trial court's findings

---

[9] Petitioner complained of counsel's failure to investigate in his state habeas application and attached numerous post 1997 articles on the adverse effects of Zoloft to his application.  *Ex parte Womack*, Application No.WR-60-118-02, pages 4-14, 19-91.  In a supplement to his habeas application, petitioner attached his sister's 2007 sworn statement, in which she stated that in August 1996, she and a friend conducted research on Zoloft at the UTMB Library in Galveston, Texas.  *Ex parte Womack*, Application No.WR-60,118-02 (Applicant's Motion to Supplement Order and Expansion of Habeas Record).  She noted that information was limited because the drug was new to the market. (*Id.*).  She attached copies of articles on Zoloft, which she gave to petitioner's trial counsel.  (*Id.*).  She claimed to have pointed out the adverse effects noted in the literature to petitioner's trial counsel and noted that petitioner displayed the agitation and other effects after he began to take the drug.  (*Id.*).

In her affidavit in state habeas proceedings, Attorney Cudd attested that she believed that petitioner's reaction to Zoloft may have triggered his actions and the incident with his wife.  *Ex parte Womack*, Application No.WR-60,118-02, Supp Recd, page 7.  She attested to the research and investigation that she conducted into the effects of such medication in August or September of 1996 and her attempt to elicit evidence of such reaction during pre-trial proceedings.  *Id.*, pages 7-8.  She indicated that this information and an insert to a Zoloft prescription was provided to her by petitioner's sister and that they had several discussions that petitioner may have suffered a side effect from the use of the drug.  *Id.*, page 7.  In addition to the psychiatrists, Cudd consulted with her family doctor and another doctor, who had just written an article on Zoloft and who also advised her that its use would not trigger aggression. (*Id.*, page 8).  She attested that in 1996, "there was not the body of evidence available to the public nor the evidence in this case to support [her] theory [that an adverse reaction to Zoloft caused petitioner to harm his wife].  *Id.*, page 8.

Petitioner submitted an unsworn declaration in which he stated that Attorney Cudd did not discuss with him a defense based on involuntary intoxication based on a reaction to the Zoloft.  *Id.*, pages 9-10.

26

of fact and conclusions of law and the Court's independent review of the entire record.  *See Ex parte Womack*, Application No.WR-60,1180-02 (Order Issued).

Petitioner presents nothing to rebut the presumed correctness of these findings with clear and convincing evidence, or to show that the state court's determination was contrary to or involved an unreasonable determination of the facts based on the evidence in the record. Moreover, he presents no evidence to show that his ingestion of medication was non-volitional, that he was unaware of the side-effects of the prescribed medication, that the combination of drugs and/or the dosage of medication he ingested could result in legal insanity, or that he was legally insane when he killed his wife.  Nor does petitioner demonstrate a reasonable probability that, had counsel raised the purported defense, it would have met with success.  Accordingly, petitioner fails to meet his burden under *Strickland* and shows no basis for federal habeas relief.

C.    Due Process

Petitioner complains that he was denied due process of law because the state district court did not instruct the jury on the issue of involuntary intoxication.  (Docket Entry No.1).  The state habeas courts did not issue a finding of fact or conclusion of law on this issue.

Generally, errors in a state court's jury instructions do not form the basis for federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).  The question for purposes of federal habeas review is whether the failure to give the proffered instruction "by itself so infected the entire trial that the resulting conviction violates due process."  *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).  Texas law requires that a trial court to charge a jury on any defensive issue raised by the evidence, "regardless of its substantive character."  *Brown v. State*, 955 S.W.2d 276, 279 (Tex. Crim. App. 1997).  *Brown* states the following, in pertinent part:

> A defendant is entitled to an affirmative defensive instruction on every defense raised by the evidence regardless of whether it is strong, feeble, unimpeached, or contradicted, and even if the trial court is of the opinion that the testimony is not entitled to belief. The defendant's testimony alone may be sufficient to raise a defensive theory requiring a charge.

*Id.* (quoting *Williams v. State*, 630 S.W.2d 640, 643 (Tex. Crim. App. 1982)). The record in this case does not reflect that petitioner's trial counsel requested an instruction on the issue of involuntary intoxication or that the evidence gave rise to such instruction. Accordingly, petitioner is not entitled to federal habeas relief on this ground.

D.    Actual Innocence

Petitioner contends that he is actually innocent of the murder charge because he was involuntarily intoxicated at the time of the offense from ingesting prescription medication, involuntary intoxication negates the element of a culpable mental state to murder, and he was denied the effective assistance of counsel at trial. (Docket Entry No.1). Although petitioner raised the same issue in his state habeas application and attached copies of new literature on the adverse effects of Zoloft, the state habeas courts did not enter specific findings of fact or conclusions of law on this issue even though they denied state habeas relief.

Claims of "actual innocence" based on newly discovered evidence do not constitute an independent ground for granting federal habeas corpus relief. *Herrera v. Collins*, 506 U.S. 390, 400-01 (1993). However, a state prisoner who supplements his federal habeas claims with "a colorable showing of actual innocence" can thereby circumvent procedural barriers to obtaining federal habeas review on the merits for his constitutional claims. *Id.* at 404. Petitioner's belated attacks on the ineffectiveness of his trial counsel and his suggestion that recent literature affirms his claim that he was under the influence of Zoloft when he murdered his wife do not independently warrant federal habeas corpus relief. Under *Herrera*, even new

evidence establishing a state prisoner's actual innocence beyond any doubt does not independently authorize federal habeas corpus relief.  *Id.* at 400-02.

A showing of "actual innocence," however, opens the door to federal habeas review of procedurally defaulted claims and claims that would otherwise be barred by abuse-of-the-writ principles.  *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995); *Herrera*, 506 U.S. at 404.  A petitioner seeking to surmount a procedural default through a showing of "actual innocence" must establish it is more likely than not that, in light of the new evidence, no juror, acting reasonably, would have voted to find the petitioner guilty beyond a reasonable doubt.  *Schlup*, 513 U.S. at 327.  *See also House v. Bell*, 547 U.S. 518, 538 (2006) (finding "[a] petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt-or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt").  Thus, even though petitioner may not seek federal habeas corpus relief premised exclusively on a showing that new evidence establishes his "actual innocence," he may assert such an argument as a means of circumventing his procedural default on any other constitutional claim he presents to this Court.  *House*, 547 U.S. at 536-38.

Petitioner's documentary evidence in state habeas proceedings regarding the adverse effects of Zoloft and his contentions about the ineffectiveness of his trial counsel do not satisfy the constitutional "actual innocence" standard discussed in *House*.  The threshold for a showing of "actual innocence" is "extraordinarily high."  *Id.* at 553-55.  To satisfy such evidentiary standard it was incumbent upon petitioner to present the state habeas court (or this Court) with some actual newly discovered evidence establishing "more likely than not any

reasonable juror would have reasonable doubt."  Petitioner presented neither the state habeas court nor this Court with any such evidence.

Accordingly, petitioner is not entitled to federal habeas relief on this ground.

IV.    CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted).  Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001).  On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling."  *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).  A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For the reasons stated in this Opinion on Dismissal, the Court has determined that petitioner has is not entitled to a certificate of appealability.  Therefore, a certificate of appealability from this decision will be denied.

IV.    <u>CONCLUSION</u>

Accordingly, the Court ORDERS the following:

1.    Respondent's Motion for Summary Judgment (Docket Entry
       No.26) is GRANTED.

2.    This cause of action is DISMISSED, with prejudice.

3.    A certificate of appealability is DENIED.

4.    Petitioner's Motions to Amend and for an Evidentiary Hearing
       (Docket Entries No.30, No.32) are DENIED.

5.    All other pending motions, if any, are DENIED.

The Clerk will provide copies to the parties.

SIGNED at Houston, Texas, this 28th day of February, 2011.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE